UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| CARL A. NELSON, | ) | CASE NO. 1:09 CV 123 |
| | ) | |
| Petitioner, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| OHIO ADULT PAROLE AUTHORITY, | ) | AND ORDER |
| | ) | |
| Respondent. | ) | |

      Pro se petitioner Carl A. Nelson filed this Petition for a Writ of Habeas Corpus on January 16, 2009 naming the Ohio Adult Parole Authority ("OAPA") as the Respondent. Mr. Nelson is incarcerated in the Grafton Correctional Institution. He asserts that Ohio adopted new parole guidelines in 2007, which may result in increased punishment if utilized at his future parole eligibility hearing. He seeks an order from this Court requiring the OAPA to consider his parole eligibility using the previous parole guidelines.

**Background**

      Mr. Nelson was convicted on October 21, 1987 on four counts of rape with specifications and one count of kidnaping. At the sentencing hearing, the court acknowledged that Mr. Nelson had a prior conviction for rape and kidnaping for which he was sentenced to 4 to 25 years incarceration in 1978. It is not clear whether Mr. Nelson had completed 1978 sentence when

he was convicted in 1987.  He was sentenced on October 28, 1987 to an indefinite term of incarceration of 15 to 25 years on each of the five counts to be served consecutively, for an aggregate total sentence of 75 to 125 years.

Mr. Nelson received his first parole eligibility hearing on August 12, 1997, after serving just 10 years of his 75 year minimum sentence.  He claims under the guidelines developed 1987, he should have been assigned an aggregate guideline score of 3.  That would have given him a continuance of 13-18 months.  Instead, he was given a 10 year continuance with his next parole hearing scheduled for August 2007.[1]

In 1998, and again in 2000, the Ohio Adult Parole Authority ("OAPA") revised its guidelines to evaluate a prisoner's suitability for release on parole.  These guidelines assigned a numerical offense category to an inmate based upon the nature of his or her crime, and a risk score based upon several factors including the inmate's criminal record, and institutional behavior.  The two numbers were then placed on a grid which determined if the inmate was suitable for release, or in the alternative, the recommended number of months the inmate should serve before he or she would again be considered for parole.  These guidelines were not mandatory and the OAPA had the discretion to depart upward or downward from the guideline score.

A half-time review was set for September 11, 2002.  Mr. Nelson was assigned to offense category 10.  He does not provide his risk score.  He states the guidelines suggested he should serve 150-210 months before being considered for release.  He indicates that although he

---

[1] Mr. Nelson contends that the guidelines developed in 1998 were used at his 1997 parole hearing.  These guidelines were not formulated and utilized until the year after Mr. Nelson claims he had his parole hearing.  It is likely, therefore, that Mr. Nelson's hearing was held in 1998, not 1997, or that an earlier version of the guidelines was used.

2

had already served 182 months of incarceration, he was told he would have to serve the remainder of his ten year continuance before his next parole hearing would take place. The seriousness of his crime was noted as a factor in denying his release on parole.

In 2007, the OAPA again revised its parole guidelines to incorporate the substantive modifications imposed by recent Ohio Supreme Court decisions and to give consideration to current definite sentences imposed for similar offenses under Senate Bill 2. Under the 2007 guidelines, the low end of the guideline range became the actual minimum sentence the inmate received by the sentencing court. The upper end of the guideline range reflects the amount of incarceration that the inmate would have received as a definite sentence if he or she had been convicted after Senate Bill 2. Offenses carrying a maximum sentence of life (including murder) are all classified in the highest offense category, "13." For inmates in category 13, the guideline range is always going to be the inmate's minimum sentence to the inmate's maximum sentence. The OAPA still has complete discretion to grant or deny parole. In addition, inmates will no longer receive a projected release date unless that release date is within 5 years of the hearing. If the board determines that the inmate is not suitable for release within 5 years, the hearing will be continued. The first continuance can be up to ten years. Thereafter, the hearing may only be continued for five years, unless a longer continuance is approved by the Central Board of Review.

Mr. Nelson's next hearing was scheduled for August 15, 2007. Parole Board members noted his achievements in prison and recommended parole be granted. His case was sent to the Central Board of Review where, on January 17, 2008, he was denied parole and issued a 36 month continuance. He contends that the reason given for denying parole was the serious nature of his crime. He contends that is a "static factor that cannot be changed by any actions of the

3

petitioner." (Pet. at 4-5.)

On January 16, 2009, Mr. Nelson filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. He contends that the use of guidelines developed after 1987 to determine suitability for release on parole violates the ex post facto clause of the United States Constitution. He seeks a new parole hearing utilizing the 1987 guidelines.

**Analysis**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, was signed into law on April 24, 1996. The provisions of the AEDPA apply to habeas corpus petitions filed after that effective date. Lindh v. Murphy, 521 U.S. 320, 336 (1997); see Woodford v. Garceau, 538 U.S. 202, 210 (2003); Barker v. Yukins, 199 F.3d 867, 871 (6th Cir. 1999)("It is now well settled that AEDPA applies to all habeas petitions filed on or after its April 24, 1996 effective date.") Because Mr. Nelson's petition was filed on January 16, 2009, the AEDPA governs this court's consideration of his petition.

The AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, and 'to further the principles of comity, finality, and federalism.'" Woodford, 538 U.S. at 206 (citing Williams v. Taylor, 529 U.S. 362, 436 (2000)). In advancing such goals, Section 2254(d) places new constraints on "the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." Williams, 529 U.S. at 412. Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1) resulted in a decision that was contrary to, or involved an

4

>unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A federal court may grant a petition for a writ of habeas corpus filed by a person in state custody only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States and only if "it appears that ... the applicant has exhausted the remedies available in the courts of the State...." 28 U.S.C. § 2254(a) &(b)(1); Hannah v. Conley, 49 F.3d 1193, 1196 (6th Cir. 1995) (per curiam); Clemmons v. Sowders, 34 F.3d 352, 354 (6th Cir. 1994). "The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." Manning v. Alexander, 912 F.2d 878, 881 (6th Cir. 1990) (citations omitted). "An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). For the claim to be exhausted, it must be presented to the state courts as a federal constitutional issue, not merely as an issue arising under state law. Koontz v. Glossa, 731 F.2d 365, 369 (6th Cir. 1984). Moreover, the claim must be presented to the state courts under the same theory in which it is later presented in federal court. Wong v. Money, 142 F.3d 313, 322 (6th Cir. 1998). It cannot rest on a theory which is separate and distinct from the one previously considered and rejected in state court.

## Statute of Limitations

To the extent that Mr. Nelson is challenging his 1997 and 2002 parole hearings, his claims are time barred.[2] Under 28 U.S.C. § 2244(d)(1)(A), a state prisoner has one year from the date on which the state judgment of confinement becomes final to file for federal habeas relief. Austin v. Mitchell, 200 F.3d 391, 393 (6th Cir. 1999). A parole decision becomes final upon the determination by a hearing officer of the Ohio Adult Parole Authority that the petitioner should not be released on parole. Petitioner states that he had parole hearings in August 1997, September 11, 2002, and August 15, 2007. As noted above, his federal habeas petition was not filed until January 16, 2009. The one year statute of limitations period clearly expired for the parole hearings held in 1997 and 2002.

## Exhaustion of State Court Remedies

Although Mr. Nelson filed this petition under 28 U.S.C. §2241, he does not evade the requirements imposed by § 2254. The Sixth Circuit has concluded:

> If a state prisoner has been convicted in state court, is thereby incarcerated, and then files a § 2241 petition complaining about the condition or circumstances of that incarceration, then logic tells us that the person is detained because of a process issued (a conviction) by a state court. When it is clear that the detention results from a state court conviction, the habeas petition arises from the genesis of custody--the state conviction.

Greene v. Tennessee Dep't of Corrections, 265 F.3d 369, 372 (6th Cir. 2001); see James v. Walsh, 308 F.3d 162, 167 (2d Cir. 2002) ("[A] state prisoner may challenge either the imposition or the execution of a sentence under Section 2254."). A petition for habeas relief pursuant to § 2254 is proper as long as the original cause of incarceration was the judgment of a state court. A prisoner

---

[2] See Klopp v. Wolfe, No. 00-4178, 2001 WL 493412 (6th Cir. April 30, 2001)(applying the statute of limitations period for §2254 cases to parole revocation issues).

6

also may bring an action pursuant to § 2241, but this change of statute does not change the nature of the action:

> [W]hen a prisoner begins in the district court, § 2254 and all associated statutory requirements apply no matter what statutory label the prisoner has given the case. (Roughly speaking, this makes § 2254 the exclusive vehicle for prisoners in custody pursuant to a state court judgment who wish to challenge anything affecting that custody, because it makes clear that bringing an action under § 2241 will not permit the prisoner to evade the requirements of § 2254.) Indeed, . . . § 2254 was the correct vehicle for contesting loss of good time credit in prison disciplinary proceedings . . . .

Greene, 265 F.3d at 371 (quoting with approval Walker v. O'Brien, 216 F.3d 626, 633 (7th Cir. 2000)). Thus, Mr. Nelson may bring his petition pursuant to § 2241 as well as § 2254, but he must comply with the exhaustion requirements of § 2254 in either case. See Coleman v. Thompson, 501 U.S. 722, 731 (1991)(requiring state prisoner bringing a federal habeas action to show that he exhausted available state remedies); Williams v. O'Brien, 792 F.2d 986, 987 (10th Cir. 1986)(concerning a § 2241 petition filed by a state prisoner).

There is no indication that Mr. Nelson exhausted his state court remedies for his claim pertaining to his 2007 parole hearing. While the OAPA's decision to deny parole is not subject to judicial review, inmates may challenge the constitutionality of the application of the Ohio parole guidelines in a Declaratory Judgment action. Hattie v. Anderson, 68 Ohio St. 3d 232, 235 (1994); see Curtis v. Ohio Adult Parole Authority, No. 04AP-1214, 2006 WL 23248 (Ohio App. 10 Dist. Jan. 5, 2006); State of Ohio v. Hall, Case No. 2003-T-0114, 2004 WL 2785544, slip op. at *11 (Ohio 11 Dist. Ct. App. Dec. 6, 2004). Mr. Nelson is challenging the OAPA's use of the 2007 guidelines. See Id. Mr. Nelson does not allege that he first presented these claims to the Ohio courts. Consequently, this action cannot proceed.

## Conclusion

Accordingly, this action is dismissed without prejudice pursuant to Rule 4 of the Rules Governing Section 2254 Cases. Further, the court certifies, pursuant to 28 U.S.C. §1915(a)(3), that an appeal from this decision could not be taken in good faith, and there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

IT IS SO ORDERED.

S/Peter C. Economus - 4/20/09
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE